# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CORNERSTONE C & M, INC., d/b/a Gifford-Hill
Concrete Products, and Gifford-Hill & Co.,

      Plaintiff,

vs.                                                                              No. CIV 98-1003 JC/RLP

A. S. HORNER, INC., and AMERICAN
STATES INSURANCE CO.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Plaintiff Gifford-Hill's Motion for Partial Summary Judgment, filed September 23, 1999 *(Doc. 26)*.[1] The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion is not well taken, and will be denied.

## I.     Factual Background

Defendant A.S. Horner (Horner)[2] was the successful low bidder on the Interstate 40 (I-40) upgrade project to widen and improve I-40 from Sixth Street to the Rio Grande Bridge in Albuquerque, New Mexico. Before submitting their bid, Horner sought bids for the construction of

---

[1] Defendant Horner filed a combined Response to Plaintiff's Motion for Partial Summary Judgment and Brief in Support of Partial Summary Judgment *(Doc. 28)*. Because of the package rule already in effect for Plaintiff's Motion for Partial Summary Judgment, Defendant's motion was not completely briefed. D.N.M.LR-Civ. 7.3(a)(5) (all papers related to the Motion must be filed simultaneously within the timing requirements of D.N.M.LR-Civ. 7.6). Therefore, Defendant's Motion for Partial Summary Judgment will not be considered.

[2] Co-Defendant American States Insurance Co. acted as surety for the bond executed by Horner pursuant to NMSA 1978, § 13-4-18, *et seq.*, which requires payment bonds for the protection of parties furnishing labor and material for use in public construction projects.

precast concrete walls that are attached to the embankment to create an MSE (mechanically stabilized wall system). One of the bids Horner received was from Plaintiff Cornerstone d/b/a Gifford-Hill (Gifford-Hill). Horner used the quote submitted by Gifford-Hill in assembling its bid to the New Mexico Department of Transportation. Upon receiving the contract for the I-40 upgrade, Horner and Gifford-Hill entered into a contract in which Gifford-Hill would provide the concrete panel forms to Horner for the project.

It is here that the parties disagreement begins. Because of the short completion time for the I-40 project, Horner was authorized by the Highway Department to begin fabricating panels according to Gifford-Hill specifications, even though the final drawings were not complete. Because of significant changes that were eventually made, Horner was left with a number of panels that could not be used for the I-40 project, nor any other project. Gifford-Hill argues that the estimation of panel area and select fill required for the project was simply that, an estimation; and that Horner refused to pay for the additional services and supplies that the project actually required. Horner contends that Gifford-Hill committed egregious errors in engineering design that resulted in substantial differences between the estimate and the final requirements. Finally, the parties dispute whether the estimate and subsequent purchase order included the "select backfill" required to create the panels.[3] Horner contends that the estimate given them by Gifford-Hill included select backfill as part of the estimated cost of the I-40 project. Gifford-Hill claims that the estimate contained a disclaimer which notified Horner that the estimates of select backfill were only to be used as an aid in bidding and were not included as part of the cost of the panels. *See Plaintiff's Exhibit C (attached*

---

[3] "Select backfill" is a manufactured earth material used to construct the retaining walls that support the panels. Each manufacturer of panels uses a proprietary design. Therefore, the amount of backfill required for a panel varies by panel and design.

*to* Plaintiff's Brief in Support of Partial Summary Judgment, filed September 23, 1999 *(Doc. 27))* (Plaintiff's Brief).

Gifford-Hill brought this suit to recover for the materials and labor provided to Horner for the I-40 project and for freight charges on an unrelated construction project. Horner filed a counterclaim for breach of contract and breach of warranty, negligent representation, and reformation and restitution arising from the differences between the estimated and actual requirements for the project. Gifford-Hill now seeks partial summary judgment on Horner's breach of contract and warranty claims.[4]

**II.     Analysis**

When, as here, a federal court sits in diversity, it must apply the substantive law of the state in which it sits. *See Tucker v. R. A. Hanson Co. Inc.*, 956 F.2d 215, 217 (10th Cir. 1992) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). However, a federal court sitting in diversity applies its own procedural law. *See Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). Thus, the New Mexico Supreme Court's pronouncements of substantive state law are binding on this Court while sitting in diversity. *See Perlmutter v. United States Gypsum Co.*, 4 F.3d 864, 869 n.2 (10th Cir. 1993) (a federal court sitting in diversity is obliged to follow the law as articulated by the highest court of the forum state) (citing *Menne v. Celotex Corp.*, 861 F.2d 1453, 1464 n.15 (10th Cir. 1988)). Where the New Mexico Supreme Court has not addressed an issue, this Court must anticipate how that court would rule and hold accordingly. *See Carl v. City of Overland Park, Kan.*, 65 F.3d 866, 872 (10th Cir. 1995). In so

---

[4] Plaintiff Gifford-Hill initially included Horner's claim for negligent representation (Count II) in its Motion and Brief Supporting Partial Summary Judgment. In its Reply, Gifford-Hill withdrew the motion with regard to Count II. Therefore, this opinion does not address negligent representation.

predicting, the Court will consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). The Court will consider the parties' motions in light of these standards.

**A.      Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

In reviewing a summary judgment motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 at 249-50 (citations omitted).

**B. Discussion**

It is first necessary to establish the terms of the contract in order to determine whether or not there was a breach of contract or warranty. Gifford-Hill asserts that the terms of the contract essentially provided that Gifford-Hill would supply the forms and everything needed to assemble the panels, except for the panels themselves. *See* Plaintiff's Brief at 5-6. In addition, Gifford-Hill maintains that the purchase order makes no reference to select backfill, and provides no guarantees as to the amount of select backfill required for the project. *See id.* at 6. Gifford-Hill asserts that Horner's counterclaim for breach of contract is based on representations made to Horner before the actual contract was entered into. Therefore, Gifford-Hill argues that the counterclaim for breach of contract should be dismissed because the estimate provided to Horner was only "for aid in bidding" and was not part of the final contract. Finally, Gifford-Hill asserts that the estimate cannot be considered a part of the contract because it is barred by the integration clause of the contract.[5]

On the other hand, Horner maintains that the terms of the contract *included* the estimate for select backfill that was contained in the quote, as well as any engineering required to create the panels. Furthermore, Horner claims that changes made to the design after the contract was formed resulted in Gifford-Hill breaching the contract and the warranty clause included in the contract.[6]

---

[5] The integration clause of the contract states: "This purchase order contains the complete and entire agreement between the parties with respect to the project and superceded all other written and oral arguments, invoices, understandings, statements, promises, and memoranda between the parties." *Plaintiffs Ex. J (attached to* Plaintiff's Brief*)*.

[6] The warranty clause of the contract states: "All materials and workmanship provided hereunder shall conform to applicable specifications, drawings and samples, shall be free from defects, and shall be fit for their intended use. These provisions are in addition to all other warranties implied by law or incorporated by reference. . . . In all cases of defective non-conforming work or material, Seller shall also be liable to Buyer for all loss, expense and damage caused directly or indirectly thereby. The provisions of this clause are in addition to all other remedies of Buyer provided by law." *Plaintiff's Ex. J (attached to* Plaintiff's Brief*)*.

In response, Gifford-Hill contends that the integration clause of the purchase order precludes any reference to former discussions or writings about select backfill. Also, Gifford-Hill maintains that the engineering services in question occurred before the contract was formed. Therefore, any warranty clause is inapplicable to the engineering designs created before the formulation of the contract.

"Absent ambiguity, a contract's meaning is a question of law, rather than a question of fact." *Monette v. Tinsley* ,1999-NMCA-040, 975 P.2d 361, 363. In New Mexico, if the court finds ambiguity, the jury, or fact finder, "resolves the ambiguity as an issue of ultimate fact before deciding breach and damages." *C. R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991). A contract is ambiguous if it is "reasonably and fairly susceptible of different constructions." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). Absent the presentation of other evidence, the trial court resolves ambiguity by interpreting the contract using accepted canons of construction and traditional rules of grammar and punctuation. *See id.*

A court may, however, consider extrinsic evidence to make a preliminary finding on the question of ambiguity. *See Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 341, 871 P.2d 1343, 1347 (1994). Accordingly, the New Mexico Supreme has adopted the "contextual approach" to contract interpretation. *See Mark V,* 114 N.M. at 781, 845 P.2d at 1235 (discussing *C. R. Anthony*, 112 N.M. at 508, 817 P.2d at 242). The contextual approach recognizes the "difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." *Id.* Thus, even if the language appears to be clear and unambiguous, "a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance," in order to decide whether the meaning of

a term or expression contained in the agreement is actually unclear. *Id.* Hence, a court is not restricted to the bare words of the agreement in interpreting the intent of the parties to a contract. *See Mark V*, 114 N.M. at 781, 845 P.2d at 1235. The court may consider the context in which the agreement was made to determine whether or not the party's words were ambiguous. *See id.*

Horner received bids for the panels from three different firms. Because of the proprietary nature of the business, each company quoted a price per square foot of panel based on the square footage they estimated the project to need. *See* A. S. Horner's Brief in Support. of Partial Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment at 4, filed September 23, 1999 *(Doc. 28) (*Defendant's Brief*).* As part of the bids, the companies included an estimate of how much select backfill would be required for the panel design submitted. *See Defendant's Exhibits C and D (attached to* Defendant's Brief*) and Plaintiff's Exhibit E (attached to* Plaintiff's Brief). Because this was an important factor in determining which company was the low bidder, the amount of select backfill required for the project contributed to Horner's decision to use Gifford-Hill's bid. Upon choosing Gifford-Hill's bid, Horner sent Gifford-Hill a purchase order form which Gifford-Hill filled out. *See Plaintiff's Exhibit L (attached to* Plaintiff's Brief*).*

Looking at the completed purchase order, this Court notes the language; "Please furnish the following in accordance with the contract specifications and requirements." *Plaintiff's Exhibit J (attached to* Plaintiff's Brief*).* The purchase order proceeds to list descriptions for three items--the panel forms, and two sizes of coping. *See id.* While there are quantity amounts listed for all three, a unit price is only listed for the panel forms.[7] *See id.* Underneath the descriptions are the words:

---

[7] It is unclear whether the coping is included in the price of the panels. However, for the purposes of this motion, it appears the parties do not dispute the meaning of the contract in this respect.

> Gifford-Hill to supply 40 forms and liners, alignment pins, embedded connectors with anchor bar, engineering & shop drawings, soil reinforcing, filter fabric, glue, shims and spacer blocks for installation of panels.

*See id.*

Although the terms do not appear to be ambiguous, each party is arguing that the terms represent different things. The purchase order refers to "engineering & shop drawings" as being included in the contract. However, it is unclear whether this includes the engineering and drawings that were used in the estimate provided to Horner before the contract was entered into. The contract, while indicating that the shop drawings are "to start" three weeks after receipt of other dimensions, does not indicate that the prior engineering is not included. *See id.* However, such designs are within the common trade and usages of subcontractor bidding. It is unlikely Horner would decide to use a bid in which the company had provided no estimate or design for the project. To do so would defeat the purpose of bidding at all. Thus, the term "engineering & shop drawings" is subject to two very reasonable interpretations. Therefore, the Court finds that the meaning of the terms "engineering & shop drawings" is ambiguous.

Similarly, the contract language indicates that Gifford-Hill will provide "Soil Reinforcing." Like the engineering designs provided to Horner during the bidding process, Gifford-Hill also included an estimate for select backfill that the I-40 project would require. However, Gifford-Hill maintains that this is not the "select backfill" required for the project. Yet is unclear what exactly is meant by "soil reinforcing." Given that the estimate provided to Horner included the select backfill required for the project, it is not unreasonable to believe that Horner understood the two phrases to be one and the same, or at least one inclusive of the other. Consequently, the Court finds that

because the contract is subject to two reasonable interpretations, the terms of the contract are ambiguous.

Gifford-Hill also opposes Horner's counterclaims based on the integration clause present in the contract. "Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact," *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) "In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." *Id.* at 782, 845 P.2d at 1236. However, this is not to be interpreted as allowing the use of parol evidence. *C. R. Anthony*, 112 N.M. at 509, 817 P.2d at 243 (the parol evidence rule is a rule of substantive law that bars admission of evidence extrinsic to the contract to contradict [or] supplement the writing). The integration clause is merely a reflection of the parol evidence rule. The integration clause does not bar evidence that clarifies the terms of the agreement, just as the parol evidence rule does not bar evidence to explain terms. *Id. See also* Corbin, *The Parol Evidence Rule*, 53 YALE L. J. 603, 622 (1944). Instead, the integration clause serves to prevent the introduction of evidence that would alter the meaning of the contract. Therefore, evidence of prior dealings, oral agreements and other extrinsic evidence may be used to clarify the ambiguous terms.

Because the contract is ambiguous as to its terms, the meaning to be assigned to the terms of the contract is a question of fact. Each party has presented sufficient evidence to support a reasonable interpretation of the contract and their underlying intent in forming the contract. Therefore, there exists a genuine issue of material fact regarding the terms of the contract that precludes the grant of summary judgment. It is up to the jury, or fact finder, to resolve the ambiguity

as an issue of ultimate fact before deciding breach and damages. *See C. R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 507, 817 P.2d 238, 241 (1990). For that reason, Plaintiff's Motion for Partial Summary Judgment will be denied.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff Gifford-Hill's Motion for Partial Summary Judgment is **denied**.

DATED this 27th day of October, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Thomas Keleher |
| | Spencer Reid |
| | Kathleen Regan |
| | Keleher & McLeod, P.A. |
| | Albuquerque, New Mexico |
| Counsel for Defendants: | Douglas Seegmiller |
| | Albuquerque, New Mexico |